{¶ 1} Relator, Craftsman Basement Finishing System, Inc., commenced this original action in mandamus seeking an order compelling respondent, Administrator of the Ohio Bureau of Workers' Compensation ("bureau"), to vacate its order denying relator's R.C. 4123.291 protest of the bureau's reclassification of its salespersons from *Page 2 
manual 8742 to manual 5605, and to enter an order restoring manual 8742 to relator's payroll.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined that the bureau's order was deficient because it included no written findings and presented no reasoning supporting its conclusions. Relying upon State ex rel. Ochs v.Indus. Comm. (1999), 85 Ohio St.3d 674, the magistrate recommended that because the bureau failed to sufficiently explain why it reclassified relator's salespersons to manual 5605, the court should vacate the bureau's order and remand the matter to the bureau for issuance of an order that complies with Ochs. Therefore, the magistrate has recommended that we grant a writ of mandamus.
 {¶ 3} The bureau has filed objections to the magistrate's decision arguing that the reasons for the bureau's reclassification of relator's salespersons to manual 5605 were self-explanatory. Therefore, the bureau contends that its order complies with the obligations noted inOchs. We disagree.
 {¶ 4} As noted by the magistrate, the Ochs court held that the absence of an express statutory duty requiring the bureau to explain its decision does not excuse the bureau from setting forth at least a brief explanation of its reasoning. Here, contrary to the bureau's assertion, its decision was not self-explanatory. One of the key criteria for determining the applicability of manual 5605 is whether the salespersons are exposed to construction, erection, or rigging hazards and whether the salespersons are subjected to an increase in job hazards compared to the typical outside salesperson. The bureau's *Page 3 
order fails to address this criteria. This failure is particularly significant because the bureau's order acknowledges that the reclassification was a close call. Accordingly, we overrule respondent's objections.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus ordering the bureau to vacate its order and to enter a new order consistent with this decision and the requirements set forth in Ochs.
Objections overruled; writ of mandamus granted.
 BROWN and FRENCH, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} In this original action, relator, Craftsmen Basement Finishing System, Inc., requests a writ of mandamus ordering respondent, Administrator of the Ohio Bureau of Workers' Compensation ("bureau"), to vacate an order denying relator's R.C. 4123.291 protest of the bureau's reclassification of its salespersons from manual 8742 to manual 5605, and to enter an order restoring manual 8742 to relator's payroll. *Page 5 
Findings of Fact: {¶ 7} 1. Relator is a state-fund employer who employs salespersons who schedule in-home appointments with prospective customers to discuss their basement remodeling needs. During the in-home appointments, the salesperson will obtain measurements. Thereafter, the customer is invited to relator's showroom to go over a proposed design and layout of the project, to make product selections, to finalize the price calculation, and to make payment arrangements. Thereafter, construction will begin in accordance with the project plan.
 {¶ 8} 2. In 1993, relator's predecessor, Craftsmen Home Improvements, Inc. ("Craftsmen Home"), initially applied for Ohio workers' compensation coverage. Craftsmen Home focused on kitchen remodeling, whereas relator now focuses on basement remodeling. In 1993, the bureau classified Craftsmen Home's salespersons under manual 8747 "Traveling Salesperson No Handle or Delivery of Products." Apparently, following the bureau's conversion to the NCCI classification system mandated by Am. Sub. H.B. 107, effective October 20, 1993, relator's salespersons were classified under manual 8742 "Salespersons, Collectors or Messengers — Outside."
 {¶ 9} 3. The bureau audited relator for the period January 1, 2003 to December 31, 2004. Thereafter, by letter dated May 31, 2005, the bureau informed relator that its salespersons were being reclassified to manual 5605 "Construction or Erection Estimators."
 {¶ 10} 4. The bureau's reclassification of relator's payroll to manual 5605 dramatically increased relator's premium paid to the bureau. Under manual 8742, the *Page 6 
rate was $.7923 per $100 of payroll. Under manual 5605, the rate is $6.9071 per $100 of payroll.
 {¶ 11} 5. Relator filed a protest challenging the bureau's reclassification.
 {¶ 12} 6. Following a November 15, 2005 hearing before the bureau's adjudicating committee, the committee issued an order denying relator's protest. The committee's order states:
 The facts of this case are as follows: The employer was audited for the periods from January 1, 2003 to December 31, 2004. The employer is protesting the reclassification of the salespersons' wages from manual 8742 (SALES-PERSONS, COLLECTORS OR MESSENGERS-OUTSIDE) to 5605 (CONSTRUCTION OR ERECTION ESTIMATORS).
 Present for the Employer: Danielle Coleman, Employer Douglas Readnower, Employer
 Present for the Bureau: Rod Lanning, Regional Audit Supervisor
 The employer's representative indicated that the employer does not meet the criteria for 5605 for a number of reasons. The representative indicated that its sales people have no exposure to construction, but rather go into existing structures and take measurements. The employer's representative indicated that with the exception of an initial visit, its sales people work from an office or showroom. In addition, the employer indicated that when it began business years ago, the bureau assigned it the 8742 classification and nothing has changed. The employer asserted that the change in classification would result in a 1000% premium increase.
 The Bureau's representative indicated that the estimator is the sales classification for the construction industry. The BWC representative stated that under the guidelines, a construction site can be an existing building. The BWC representative noted that this employer is on the low end of the bell curve of what may be considered a construction site. *Page 7 
While the Committee is not unsympathetic to the employer's situation, the Adjudicating Committee finds that the reclassification was proper under NCCI classification system. Therefore, the employer's protest shall be DENIED and the audit findings affirmed.
(Emphasis sic.)
 {¶ 13} 7. Relator administratively appealed the order of the adjudicating committee to the administrator's designee pursuant to R.C.4123.291(B).
 {¶ 14} 8. Following a March 9, 2006 hearing, the administrator's designee issued an order affirming the decision of the adjudicating committee.
 {¶ 15} 9. On November 29, 2006, relator, Craftsman Basement Finishing Systems, Inc., filed this mandamus action.
Conclusions of Law: {¶ 16} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 17} In State ex rel. Ohio Aluminum Industries, Inc. v. Conrad,97 Ohio St.3d 38, 2002-Ohio-5307, at ¶ 17-20, the Supreme Court of Ohio decided a case involving an employer's mandamus challenge to the bureau's manual reclassification that resulted in a higher premium to the employer. In Ohio Aluminum, the court set forth law applicable to the instant case:
 Section 35, Article II of the Ohio Constitution authorizes the board to "classify all occupations, according to their degree of hazard * * *." Implemented by what is now R.C. 4123.29(A)(1), the result is the Ohio Workers' Compensation State Fund Insurance Manual. The manual is based on the manual developed by NCCI and has hundreds of separate occupational classifications. See Ohio Adm. Code 4123-17-04, Appendix A. It also specifies the basic rate that an employer must pay, per $100 in payroll, to secure workers` *Page 8 
compensation for its employees. See Ohio Adm. Code 4123-17-02(A).
 * * *
 * * * "[T] he bureau is afforded a `wide range of discretion' in dealing with the `difficult problem' of occupational classification." State ex rel. Roberds, Inc. v. Conrad (1999), 86 Ohio St.3d 221, 222, * * * quoting State ex rel. McHugh v. Indus. Comm. (1942), 140 Ohio St. 143, 149 * * * Thus, we have "generally deferred to the [bureau's] expertise in premium matters" and will find an abuse of discretion "only where classification has been arbitrary, capricious or discriminatory." State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp. (1994), 68 Ohio St.3d 393, 396[.] * * *
 {¶ 18} In State ex rel. Progressive Sweeping Contrs., Inc. v. Bur. ofWorkers` Comp. (1994), 68 Ohio St.3d 393, 396, the Supreme Court of Ohio pronounced:
 Judicial intervention in premium matters has traditionally been warranted only where classification has been arbitrary, capricious or discriminatory. Id.; [State ex rel. Minutemen, Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 158] . See, generally, 4 Larson, Workmen's Compensation Law (1990), Section 92.67. Given this high threshold, we have been — and will continue to be — reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned.
 {¶ 19} However, in Progressive Sweeping, the court issued a writ of mandamus against the bureau. The court explained:
 * * * The bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered.
Id.
 {¶ 20} In State ex rel. Ochs v. Indus. Comm. (1999),85 Ohio St.3d 674, 675, the court states: *Page 9 
 The bureau claims that it has no duty to explain its decision because no statute specifically imposes one. It seeks to distinguish cases such [as] State ex rel. Mitchell v. Robbins Meyers, Inc. (1983), 6 Ohio St.3d 481 * * *; State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203 * * *; and State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm. (1994), 71 Ohio St.3d 139 * * *, by observing that those cases involved the Industrial Commission of Ohio, which did, and continues to, have a statutory duty under former R.C. 4123.515 to explain its decisions.
 {¶ 21} The Ochs court held that the absence of a statute imposing upon the bureau a duty to explain its decision does not excuse the bureau from having to explain its decisions. Thus, the duty to explain decisions applies to the bureau as well as to the commission which does have such a statutory duty.
 {¶ 22} In Ochs, the bureau had denied a settlement application using a form listing three potential reasons for disapproval, with boxes next to each one. Those reasons were: "(1) the requested settlement amount represents an excessive value for the above-referenced claim(s); (2) the employer was not willing to sign the settlement agreement; and (3) Other-There is no settlement value." Id. at 676.
 {¶ 23} The Ochs court denied a writ of mandamus, explaining:
 We find the selected option — no settlement value — to be self-explanatory. By so indicating, the bureau has articulated its belief that compensation paid previously is sufficient and that claimant is simply entitled to no more. Given the minor nature of claimant's injury, the ruling makes sense and, in and of itself, is deemed satisfactory.
Id.
 {¶ 24} Here, the bureau attempts to justify the order of its adjudicating committee, adopted by the administrator's designee:
 Craftsmen * * * contends that the order of The Adjudicating Committee did not adequately set forth the evidence relied *Page 10 
upon to reach its determination upholding the assignment of Code 5605. That order recites each side's position and concludes that the reclassification was proper. Application of the Code provisions to Craftsmen's operation is all that is needed: Craftsmen's salespeople are estimators for construction projects. Craftsmen fits squarely into the parameters of Code 5605 and the decision of The Adjudicating Committee was "self-explanatory." See, State ex rel. Ochs v. Indus. Comm. (1999), 85 Ohio St.3d 674, 676. There is no requirement, statutory or otherwise, that mandates that the Adjudicating Committee's order indicates anything more.
(Respondent's brief, at 7.)
 {¶ 25} The magistrate disagrees with the bureau's assertion here that the decision of its adjudicating committee is "self-explanatory," or that it is otherwise satisfactory under Ochs.
 {¶ 26} The parties to this action have stipulated to a document captioned "NCCI Classification Reference Guide — Construction Estimators vs. Site Supervisors." The document states in part:
 The following guideline outlines when construction estimator 5605 may be assigned to an employer.
 • Manual 5605 may only be assigned to employees of construction, erection or rigging operations.
 • An estimator performs duties outside of the office including selling jobs or estimating the cost of jobs.
 • They are exposed to field hazards that are greater than that of the typical salesperson, but not as great as the employees doing the actual construction work.
 • May be assigned in addition to a basic classification in which the phraseology includes terms such as "all employees", "all other employees", "all operations" and "all other operations to completion". *Page 11 
 • Manual 5605 cannot be assigned to employees performing actual work at construction sites.
 • A construction site is defined as a space of ground occupied or to be occupied by a building. This can be an existing building either commercial or residential or a building under construction.
 • The supervisor or foreman of a job site cannot be assigned manual 56053. They are directly exposed to the same hazards as the employees that are performing the construction work.
 • Such persons shall be assigned to the classification that specifically describes the type of construction or erection operation that they are supervising.
 {¶ 27} The parties have also stipulated to a document which is a page taken from the NCCI Scopes Manual. The page indicates it was issued by NCCI in October 2005. Under the heading "State Special: applies in OH," the document states:
 PHRASEOLOGY CONSTRUCTION OR ERECTION ESTIMATORS. This classification is available only to employees who sell or estimate the costs of construction, erection or rigging activities outside of an office environment with exposure to construction, erection or rigging hazards at the job/construction site. Does not apply to any person who is directly in charge of construction work. Such persons shall be assigned to the classification which specifically describes the type of construction or erection operation over which they are exercising direct supervisory control provided separate payroll records are maintained for each operation. * * *
 SCOPE This code applies only to employees of construction, erection or rigging operations who sell jobs or estimate the cost of jobs outside of an office environment with exposures to field hazards. This code applies to these employees regardless of whether the actual work is performed by the insured or subcontractors to the insured.
 * * *
 Note: General guide in determining what constitutes a construction site: The assignment of this classification is *Page 12 
based upon the type of duties the estimator has and the exposures connected with these duties. The following is to be used in determining assignment of this classification.
 Construction site: A space of ground occupied or to be occupied by a building. This location can have an existing building (commercial or residential) or a building under construction.
 Estimators who go to the job/construction site to determine the cost of a job have an increase in job hazards compared to the typical outside salesperson. However, their increased hazards are not as great as the hazards of the employees doing the actual construction work. All estimators are assigned to Code 5605 — Construction or Erection Estimators regardless of the exposures they are subjected to at the job/construction site.
 {¶ 28} Analysis begins here with some observations regarding the order of the adjudicating committee. As the bureau correctly observes here, the "order recites each side's position and concludes that reclassification was proper." In fact, that is all the order does. No written findings were made. No reasoning is presented as to how the adjudicating committee reached its conclusion.
 {¶ 29} Moreover, other than noting that the BWC representative stated that, under the guidelines, a construction site can be an existing building, the order fails to connect the decision to any specific language or concept from the scopes manual or the NCCI classification reference guide.
 {¶ 30} Under the scopes manual, it appears that the key issues are whether the salespersons who keep in-home appointments have "exposure to construction, erection or rigging hazards," at the home being visited, and whether the home being visited subjects the salesperson to "an increase in job hazards compared to the typical outside salesperson." The adjudicating committee never addressed those issues in it order. *Page 13 
 {¶ 31} The syllabus of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, a case cited by the Ochs court, states:
 In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.
 {¶ 32} The order of the adjudicating committee fails to meet the requirements of the Noll syllabus. The order fails to tell us what evidence has been relied upon and fails to briefly explain the reasoning for the decision.
 {¶ 33} Presentation of the reasoning is of particular importance here when the adjudicating committee itself reports in its order that the "BWC representative noted that this employer is on the low end of the bell curve of what may be considered a construction site," and then laments that it is "not unsympathetic to the employer's situation." This notation strongly suggests that the adjudicating committee's decision was a close call. If the decision was a close call, it cannot be "self-explanatory" as respondent asserts here. A close call decision cries out all the more for Noll compliance.
 {¶ 34} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent to vacate its order denying relator's protest and to enter a new order consistent with this magistrate's decision that complies with Ochs.