DECISION
{¶ 1} Relator, RKI, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to reclassify relator from Code 3113 to its former code, Code 3629. *Page 2 
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) No one has objected to the magistrate's findings of fact, and we adopt them as our own. In brief, a BWC auditor conducted an audit of relator on June 30, 2006. Based on that audit, BWC changed relator's classification from Code 3629 to Code 3113. The magistrate found that, in doing so, BWC did not adequately explain its reasoning for making the change. She, therefore, recommended that we issue a writ ordering BWC to reclassify relator to its old classification. BWC filed objections to the magistrate's decision, asserting that the magistrate erred in concluding (1) that the BWC's order did not provide an explanation why the manual classification was being changed, and (2) that BWC should be ordered to change relator's classification back to Code 3629.
 {¶ 3} We agree with the magistrate that BWC must explain its decisions. State ex rel. Ochs v. Indus. Comm., 85 Ohio St.3d 674, 675,1999-Ohio-294. Here, the BWC order describes relator's position and the auditor's position. As the order indicates, the auditor stated that a code change was necessary because the auditor who originally assigned Code 3629 to relator's operations did so in error. In the auditor's view, Code 3629 would only be appropriate if the operations were not described in any other classification. But, here, relator "is manufacturing tools for use in production, rather than parts." Without providing its own analysis, BWC then defers to the auditor's reasoning. *Page 3 
 {¶ 4} We do not agree with the magistrate's conclusion that the order is completely lacking in explanation or that no reasons exist to change relator's classification. Instead, we conclude that the order lacks the succinct explanation the Supreme Court of Ohio has required. Specifically, while the order appropriately describes the evidence relied upon, it fails to briefly explain the reasoning for its decision. Importantly, it does not identify the criteria applicable to Code 3113 or explain why the evidence supports reclassification consistent with those criteria. As we determined in State ex rel. Craftsmen BasementFinishing Sys., Inc. v. Mabe, Franklin App. No. 06AP-1201,2007-Ohio-5919, ¶ 4, "[t]his failure is particularly significant because the bureau's order acknowledges that the reclassification was a close call." On these grounds, we overrule BWC's first objection.
 {¶ 5} Nevertheless, we agree with BWC's assertion that, having concluded that BWC failed to meet the Ochs standard, the appropriate remedy is to grant a limited writ requiring BWC to comply withOchs. See Craftsmen Basement Finishing at ¶ 5 (granting limited writ for purpose of entering a new order). Therefore, we sustain BWC's second objection.
 {¶ 6} Following an independent review of this matter, we overrule in part and sustain in part BWC's objections. We adopt the magistrate's findings of fact as our own and adopt the conclusions of law consistent with this decision. We grant a writ of mandamus ordering BWC to vacate its order reclassifying relator and to enter a new order consistent with this decision and the requirements set forth in Ochs.
 Objections overruled in part and sustained in part, writ of mandamusgranted.
 PETREE and BROWN, JJ., concur. *Page 5 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} Relator, RKI, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to reclassify relator from Code 3113 to 3629, the code under which relator was classified previously. *Page 6 
Findings of Fact: {¶ 8} 1. In 2000, the BWC performed an audit of relator and assigned Code 3629 "Precision Machined Parts Mfg. Noc."
 {¶ 9} 2. Another audit was performed for the period July 1, 2004 through June 30, 2006, and resulted in a change. It was determined that relator should be assigned Code 3113 "Tool Mfg. — Not Drop or Machine Forged — Noc."
 {¶ 10} 3. In determining that Code 3113 was the proper code, the auditor provided the following description of relator's business operations:
 Corporation is a roll forming mills machine manufacturer a manufacturer of roll forming machine parts. The roll forming machine parts are precision machined parts that are used in roll forming mill machines. Machinists use CNC machines, polishers, and lathe to manufacture the roll forming parts that are held to tolerances of .001 inches or closer. At the same location, the company's machine assembler manufacture the roll forming mills machines. All parts for the roll forming machines are purchased. The roll forming parts that the company manufactures are used in the machines. The roll forming parts that go into the roll forming machines amount to about 2% of the total manufacturing of the roll forming parts with the other 98% of the parts being sold to customers. * * *
 * * * Per Kay Spicer, manual 3113 is the correct manual for manufacturing the roll machine parts, therefore manual 3629 is being discontinued. Also manual 3724 for installation manual 3507 for manufacturing of the roll forming machines apply. A prior audit was performed on the company by Auditor, Ed Grau on 12/8/99, and he determined that manual 3629 was correct for the roll forming machine parts manufacturing, but he wasn't aware of the fact that the parts are tools not machine parts. In addition, the company had not purchased the machine manufacturing operation, when he performed his audit. Therefore the change in manuals are being made prospective. Instructions were given, employees' contributions to their cafeteria plan were reported, but the audit is being made prospective. *Page 7 
 {¶ 11} 4. Relator protested the reclassification and made the following arguments: (1) Relator was incorrectly identified for an audit. The audit was actually supposed to be performed on a company named R.K. Industries, Inc., and (2) The BWC had previously determined that the proper code classification was Code 3629. Because there had been no changes to the classifications, relator argued that its designation should not have changed.
 {¶ 12} 5. Following a hearing on April 12, 2007, the BWC adjudicating committee issued an order denying relator's protest. The committee concluded:
 The employer's representative indicated that the employer is disputing the reclassification of its operations from Code 3629 to Code 3113. The employer makes parts for the rolling mills. The representative stated that the use of Codes 3507 (CONSTRUCTION OR AGRICULTURAL MACHINERY MFG.) and 3724 (MACHINERY OR EQUIPMENT ERECTION OR REPAIR NOC DRIVERS) are not in dispute at this time. The representative stated that the employer makes precision parts for rolling mills and therefore Code 3629 should apply. The representative emphasized that the employer was not a tool and dies shop and does not manufacture any tools. The employer's representative stated that 3629 was not assigned in error, but was properly assigned. The employer's representative stated that the employer manufactures custom parts for its customers.
 The bureau's representative stated the bureau had made a mistake in originally assigning Code 3629 to the employer's operations and therefore assigned 3113 prospectively. The BWC representative noted that the employer's brochure describing its products was carefully viewed by BWC personnel. The representative stated that the bureau is required to follow NCCI classifications. The representative stated that there are specific criteria under 3629, including that the operations not be described by any other classification. The BWC representative stated that the employer is manufacturing tools for use in production, rather than parts.
 Based upon the information submitted and the testimony elicited at the hearing, it is the decision of the Adjudicating Committee to deny the employer's protest. While the *Page 8 
 Committee admits reasonable minds could differ concerning whether Code 3629 or 3113 is the proper classification for this employer's operations, the Committee defers to the expertise of the auditor.
(Emphasis sic.)
 {¶ 13} 6. Relator filed an appeal pursuant to R.C. 4123.291(B) and a hearing took place in front of the administrator's designee on November 13, 2007. Ultimately, the administrator's designee affirmed the decision, findings, and rationale set forth in the order of the adjudicating committee.
 {¶ 14} 7. Thereafter, relator filed the instant mandamus action in this court arguing that the BWC abused its discretion when it classified relator under Code 3113.
Findings of Fact: {¶ 15} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 16} Relator argues that the first designation of Code 3629 accurately describes relator's business. As such, relator argues that the BWC abused its discretion when relator's code designation was changed without an appropriate explanation. In part, relator argues that there is no evidence indicating that the auditor was an expert in such matters and that his testimony is suspect. Relator also argues that its reclassification was unpredictable and inconsistent with the BWC's previous actions. *Page 9 
 {¶ 17} In State ex rel. Ohio Aluminum Industries, Inc. v. Conrad,97 Ohio St.3d 38, 2002-Ohio-5307, at ¶ 17-20, the Supreme Court of Ohio decided a case involving an employer's mandamus challenge to the BWC's manual reclassification that resulted in a higher premium to the employer. The court set forth law applicable to the instant case:
 Section 35, Article II of the Ohio Constitution authorizes the board to "classify all occupations, according to their degree of hazard * * *." Implemented by what is now R.C. 4123.29(A)(1), the result is the Ohio Worker's Compensation State Fund Insurance Manual. The manual is based on the manual developed by [National Council on Compensation Insurance, Inc.] and has hundreds of separate occupational classifications. See Ohio Adm. Code 4123-17-04, Appendix A. It also specifies the basic rate that an employer must pay, per $100 in payroll, to secure workers' compensation for its employees. See Ohio Adm. Code 4123-17-02(A).
 Currently at issue are classification numbers 3085 and 3632. The former is very specific, governing nonferrous metal foundries. The latter is basically a catchall provision for machine shops. It is entitled "Machine Shop NOC [Not Otherwise Classified]," which means that it applies "only if no other classification more specifically describes the insured's business." Ohio Adm. Code 4123-17-08(C)(2)(g).
 In 1982, the bureau designated OA's postcasting machining, i.e., grinding, filing, heat-treating, etc., as 3632 activities. In 1996, a bureau audit found insufficient on-site postcasting activities to continue assigning 3632 as a separate classification. This conclusion was based on three things: (1) the absence of a separate and distinct machine shop (as constrasted with 1982), (2) statements from two plant officials that the machine shop had relocated, and (3) OA's lack of any cost-accounting processes or direct labor assigned to a machine-shop account. It is around these points that our controversy revolves.
 OA has an uphill battle from the outset. That is because "[t]he bureau is afforded a `wide range of discretion' in dealing with the `difficult problem' of occupational classification." State ex rel. Roberds, Inc. v. Conrad (1999), 86 Ohio St.3d 221, 222, * * * quoting State ex rel. McHugh v. Indus. Comm. (1942), 140 Ohio St. 143, 149[.] * * * Thus, we have "generally deferred to the [bureau's] expertise in *Page 10 
 premium matters" and will find an abuse of discretion "only where classification has been arbitrary, capricious or discriminatory." State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp. (1994), 68 Ohio St.3d 393, 396[.] * * *
 {¶ 18} In State ex rel. Progressive Sweeping Contrs., Inc. v. OhioBur. of Workers' Comp. (1994), 68 Ohio St.3d 393, 396, the Supreme Court of Oho stated:
 Judicial intervention in premium matters has traditionally been warranted only where classification has been arbitrary, capricious or discriminatory. Id.; [State ex rel. Minutemen, Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 158]. See, generally, 4 Larson, Workmen's Compensation Law (1990), Section 92.67. Given this high threshold, we have been — and will continue to be — reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned.
 {¶ 19} In spite of this deference, the court in ProgressiveSweeping issued a writ of mandamus against the BWC. The court explained: "The bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered." Id.
 {¶ 20} Later, in State ex rel. Ochs v. Indus. Comm. (1999),85 Ohio St.3d 674, 675, the court stated:
 * * * The bureau claims that it has no duty to explain its decision because no statute specifically imposes one. It seeks to distinguish cases such [as] State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481 * * *; State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203 * * *; and State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm. (1994), 71 Ohio St.3d 139, * * * by observing that those cases involved the Industrial Commission of Ohio, which did, and continues to, have a statutory duty under former R.C. 4123.515 to explain its decisions.
 {¶ 21} The court in Ochs held that the absence of a statute imposing upon the BWC a duty to explain its decision does not excuse the BWC from having to explain its *Page 11 
decision. As such, the duty to explain decisions applies to the BWC as well as the commission which does have such a statutory duty.
 {¶ 22} In the instant case, no explanation was provided regarding why relator's operations were being reclassified. There is no evidence that relator's business had changed in any way. Further, in its order, the BWC "admit[ed] reasonable minds could differ concerning whether Code 3629 or 3113 is the proper classification for this employer's operations." As such, there is no reason for the BWC to recalculate relator's business given that no changes had occurred and the BWC has not even argued that a mistake was made regarding relator's original classification under Code 3629.
 {¶ 23} Based on the forgoing, it is this magistrate's decision that this court should issue a writ of mandamus ordering the BWC to vacate its order reclassifying relator and issue an order reclassifying relator under the original designation Code 3629. *Page 1